UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **DERMETRIS SIMS,** | } |
| Petitioner, | } |
| v. | } Case No.: 1:23-cv-08025-RDP |
| | } 1:21-cr-00065-RDP-SGC |
| **UNITED STATES OF AMERICA,** | } |
| Respondent. | } |

## MEMORANDUM OPINION

Before the court is Petitioner Dermetris Sims's ("Sims") Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Doc. # 1).[1] The motion has been fully briefed. (Docs. # 1, 4). After careful review, and for the reasons discussed below, the motion is due to be denied.

**I.   Background**

On May 25, 2021, a grand jury returned a six-count superseding indictment against Sims and a group of co-Defendants alleging numerous drug and conspiracy charges. Sims was charged with conspiracy to possess with intent to distribute twenty-eight (28) grams or more of crack cocaine, fifty (50) grams or more of methamphetamine, and a mixture and substance containing a detectable amount of cocaine hydrochloride (Count I); and possession with intent to distribute fifty (50) grams or more of methamphetamine (Count II).

On January 12, 2022, Petitioner entered into a binding plea agreement and pled guilty to Count I, with the agreement that the Government would dismiss Count II.[2] (Cr. Doc. # 143). Sims's

---

[1] The court refers to the documents filed in Sims's underlying criminal case (1:21-cr-00065-RDP-SGC) as (Cr. Doc. #). Documents cited as (Doc. #) refer to documents filed in the present matter.

[2] Petitioner and his attorney signed the agreement on January 12, 2022. The Government signed its acknowledgment on January 20, 2022.

Plea Agreement contains a detailed factual basis, which laid out evidence that established each element of the conspiracy charge. (*Id.* at 2-4). Specifically, the Plea Agreement states that Sims agreed to sell $2,200 worth of methamphetamine to a reliable confidential source ("CS"). (*Id.* at 3). The CS and Sims met in Anniston, Alabama while under surveillance of multiple DEA Agents. (*Id.*). When the CS arrived in Anniston, Sims walked up to the driver's side door and handed the CS a purple solo cup containing suspected methamphetamine and the CS handed Sims the money. (*Id.*). The suspected methamphetamine was later tested and confirmed to be methamphetamine. (*Id.*). Sims personally stipulated that the facts set forth in the agreement were substantially correct and that the court could use them in calculating his sentence. (*Id.* at 3-4). Sims further stipulated that the amount of methamphetamine attributable to this conduct was 111 grams. (*Id.* at 4).

Sims's Plea Agreement listed the consequences of accepting the Agreement. Specifically, the Plea Agreement explicitly stated that Sims would "waive and give up the right to challenge [his] conviction and/or sentence…or the manner in which [his] conviction and/or sentence…were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255." (*Id.* at 6). Sims, however, explicitly reserved the right to contest any of the following in a post-conviction proceeding:

    (a) Any sentence imposed in excess of the applicable statutory maximum sentence(s);

    (b) Any sentence imposed in excess of the advisory guideline sentencing range calculated by the court at the time [the] sentence is imposed; and

    (c) Ineffective assistance of counsel

(*Id.* at 6-7). The Agreement also set forth the recommended sentence for Petitioner, which included an "appropriate reduction" in the offense level for acceptance of responsibility and a term of imprisonment within the advisory guideline range. (*Id.* at 5).

The court held a change of plea hearing where Petitioner appeared with counsel and pled guilty under oath after an extensive colloquy with the court. Petitioner initialed and signed the Guilty Plea Advice of Rights Certification, acknowledging that his attorney had explained in detail the consequences and benefits of entering into the Plea Agreement. (Cr. Doc. # 145). The United States Probation Office then prepared and sent the parties a copy of the Presentence Investigation Report ("PSR"). (Cr. Doc. # 241). The PSR set the base offense level at a 32 based on a calculation of 328.5 grams of methamphetamine. (*Id.* at ¶ 55). This included 111 grams of methamphetamine distributed to the CS on August 20, 2020 and 217.5 grams of methamphetamine distributed to the CS on September 14, 2020. (*Id.* at ¶¶ 33-38, 55). Based on Sims's position as a leader of co-Defendants Alacaliph Woodard, Laroyal Fomby, Brent Conner, Shelton Sims, David Clark, and Mary Davis, the Probation Office included a 4-level enhancement to his offense, bringing him to a level 36. (*Id.* at ¶ 58). Next, the Probation Office determined that he was a career offender based on his prior felony convictions for drug crimes. (*Id.* at ¶ 61). This brought his offense level to 37. (*Id.*). The Probation Office subtracted three (3) points based on Sims's acceptance of responsibility, bringing the total offense level to 34. (*Id.* at ¶¶ 62-64). This led a guideline imprisonment range of 262 months to 327 months. (*Id.* at ¶ 113).

On August 1, 2022, before the sentencing hearing, Sims's counsel, John C. Robbins ("Robbins"), filed a sentencing memorandum. (Cr. Doc. # 237). In the memorandum, Robbins raised several arguments on behalf of Petitioner. First, he argued that the amount of methamphetamine attributable to Sims was 111 grams as set forth in the stipulation of facts in the plea agreement, not the 328.5 grams accounted for by the Probation Office. (*Id.* at ¶ 1). Robbins further objected to the allegation that Sims was a "leader" of the group. (*Id.* at ¶ 2). Robbins also stated that he advised Sims that he could qualify as a career offender based on his prior drug

convictions but objected to this classification based on the fact that one of the predicate offenses took place over fifteen (15) years prior. (*Id.* at ¶¶ 3-4). He argued that the proper number of criminal history points would be five (5) when considering that three of the convictions took place over fifteen (15) years ago and should not result in any criminal history points. (*Id.* at ¶ 6). Considering all of these objections, Robbins argued that the appropriate adjusted offense level should be 27 with a guideline range of 87-108 months. (*Id.* at ¶ 7). He acknowledged that the appropriate offense level would be 37 if Sims qualified as a career offender, with a resulting guideline range of 262 to 327 months. (*Id.* at ¶ 8). Counsel's position was that Sims should be sentenced to 120 months. (*Id.* at ¶ 9).

On September 8, 2022, Sims was sentenced to 142 months imprisonment, well below the original guideline range because of a departure and a variance. This was adjusted from a sentence of 160 months to account for time already served. (*Id.*). *See* U.S.S.G. § 5G1.3(b).

In his Motion, Sims argues that his counsel was ineffective for four reasons: (1) failing to object to the amount of methamphetamine attributed to Sims in the PSR; (2) failing to object to Sims's classification as a "Leader/Organizer" of the Defendants in the PSR; and (3) failing to object to the number of criminal history points assigned to Sims in the PSR. (*See generally* Doc. # 1). Sims also brings a "Breach of Plea Agreement" claim, which is unrelated to his ineffective assistance of counsel claim based on the amount of methamphetamine attributed to him. (*Id.* at 19-20).

## II.   Standard of Review

Title 28 U.S.C. § 2255 authorizes federal prisoners to move in the court of conviction to vacate, set aside, or correct their sentence on the ground that the sentence was imposed in violation of the Constitution or the laws of the United States. *See* 28 U.S.C. § 2255(a). A § 2255 motion is

subject to heightened pleading requirements which mandate that the motion must specify all the grounds of relief and state the facts supporting each ground. *See* Rules 2(b)(1) & (2), Rules Governing § 2255 Proceedings; *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994). When a § 2255 motion is filed, it is subject to preliminary review, at which time the court is authorized to summarily dismiss the motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing § 2255 Proceedings. A § 2255 movant is not entitled to a hearing or post-conviction relief when his motion fails to state a cognizable claim or contains only conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible. *See Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001).

An ineffective assistance of counsel claim has two prongs: (1) the petitioner "must show that the counsel's performance was deficient"; and (2) the petitioner "must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The second prong is satisfied only when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A petitioner must identify specific acts or omissions which reveal the lack of reasonably effective assistance. *Strickland*, 466 U.S. at 687; *see also, e.g.*, *Lecroy v. United States*, 739 F.3d 1297, 1321 (11th Cir. 2014) ("the burden of proof . . . on a § 2255 petition belongs to the petitioner"). "Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (internal citations omitted).

In examining counsel's performance, the court should be "highly deferential." *Strickland*, 466 U.S. at 689. The court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. The court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry his burden by offering bare accusations and complaints, but rather "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The defendant must show "that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than a complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

Where a petitioner fails to show that his counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the court does consider the second prong, however, a petitioner must show that counsel's errors were prejudicial and "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden can be met by establishing by a reasonable probability that the outcome of the proceeding would have been

different but for counsel's errors. *Williams v. Threatt*, 529 U.S. 362, 391-93 (2000); *Strickland*, 466 U.S. at 691.

### III. Discussion

As a threshold matter, "Breach of Plea Agreement" is not a proper basis for a motion brought under 28 U.S.C. § 2255. The statute allows for a prisoner in custody to move the court on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "Breach of Plea Agreement" does not fall within any of these defined bases. Additionally, Sims waived his right to challenge his sentence under § 2255 except in three circumstances – one of which is a claim for ineffective assistance of counsel. (Cr. Doc. # 143 at 6-7). The facts alleged in the "Breach of Plea Agreement" section of Sims's motion are included in his ineffective assistance of counsel claim where he alleges that his counsel failed to object to the amount of methamphetamine attributed to his conduct. Therefore, Sims's Breach of Plea Agreement claim is waived; however, the court will consider his arguments in connection to his ineffective assistance of counsel claim.

Sims's other claims are that his counsel was ineffective because he failed to object to three elements of the PSR: (1) the amount of methamphetamine attributed to Sims; (2) Sims's classification as a "Leader/Organizer," and (3) the number of criminal history points assigned to Sims in the PSR. These claims, however, are contradicted by the record in the criminal case. Sims's counsel made proper objections to all three of these issues in the sentencing memorandum. (Cr. Doc. # 237 at ¶¶ 1-4). Therefore, Sims cannot meet his burden to show that his counsel performed

deficiently, and he certainly cannot show that any alleged errors prejudiced his defense in any way (because they did not happen). *See Strickland*, 466 U.S. at 687.

Likewise, Sims cannot prove that the outcome of his case would have been different but for the alleged errors of his counsel. *See Williams,* 529 U.S. at 391-93. As previously stated, Sims has not identified any cognizable errors committed by his counsel. However, even if counsel had failed to object to certain elements of the PSR (and again, he did not), Sims cannot show that the outcome would have been different. In fact, the court, considering all factors including Defendant's sentencing memorandum, imposed a lower sentence than what was recommended in the PSR. (Cr. Doc. # 242). Furthermore, even if the court had sustained the objections on the attribution amount and Sims's classification as a "Leader/Organizer," his prior offenses qualify him as a "career offender" regardless of his objections. The sentence of 142 months would fall within the guidelines of a career offender at offense level 27. Thus, even if Sims were able to demonstrate error by his counsel, he would not be able to show that he was entitled to a different result. The court found then and reaffirms now that 142 months was a reasonable sentence under 18 U.S.C. § 3553 regardless of the guidelines. Sims has failed to show cause <u>and</u> prejudice. His ineffective assistance of counsel claim fails.

### IV.    Conclusion

For the reasons discussed above, Sims's Motion to Vacate, Set Aside, or Correct Sentence (Doc. # 1) is due to be denied. An order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this December 10, 2025.

_____
R. DAVID PROCTOR
CHIEF U.S. DISTRICT JUDGE